JOHN H. THORPE *v.* JOHN BEAVANS, Trustee of ANDREW GUNTER and others.

The purchaser at an execution sale, cannot be held liable for any device of the defendant in the execution, of which he was innocent and ignorant.

When a relation of the defendant in an execution, purchases property and then conveys it to the defendant, it raises a suspicion which, with other circumstances, should go to the jury to be weighed by them in determining the question of fraud.

The purchaser of property at an execution sale, has the right to buy up the debts of the execution creditors, and thus obtain a certain amount of control over the sale; and to the amount of the execution debts bought, such purchaser has a right to have them credited on his bid, in lieu of paying the whole of it in cash.

A purchaser at an execution sale, may lawfully buy the property of the insolvent debtor, with the intent of afterwards giving the whole or a part thereof to such debtor, or his family.

This was a CIVIL ACTION for the recovery of land and damages for its detention, tried before *Watts, J.,* and a jury at June Term, 1875, HALIFAX Superior Court.

The action was originally instituted in the name of Joel Wells, a citizen of Nash county, against the defendant, Andrew Gunter, alone, but Wells having died during the pendency of the action, his executor and sole devisee, the present plaintiff, was admitted to prosecute the suit; and at the same time the defendant, Beavans, having asserted his claim to the land in controversy, under a deed in trust, hereafter mentioned, was made a party defendant, whereupon an agreement of record was entered into between the parties plaintiff and defendant, that the title to the land in controversy should be tried upon its merits.

At the trial the plaintiff gave in evidence a judgment of the Superior Court aforesaid, for about the sum of $1,000, principal and interest, recovered by Wells at Spring Term, 1867, against Gunter and one Pittman, which judgment was duly

16

docketed in the Clerk's office of the Superior Court of the county of Halifax, on the second day of February, 1869. Execution having issued thereupon, was stayed by military order. A *fi fa.* was issued upon said judgment on the 1st day of April, 1869, and was levied upon the two tracts of land in controversy. A *ven. ex.* issued out of said Court tested of February Term, 1869, under which said land was sold according to law, on the 5th day of June, 1869, when the said Wells became the highest bidder, bidding five dollars for each tract, and a deed, duly recorded and proven, from the sheriff of Halifax county, whereby the land was conveyed in fee simple to the said Wells.

The plaintiff then introduced witnesses who identified the land mentioned in the execution and deed, as the land described in the complaint, and stated that Gunter had originally owned and had continued in possession of said land. The plaintiff here rested his case.

The defendant offered in evidence three judgments of the Superior Court of Halifax county against Gunter. The first recovered by Tannahill, McIlwaine & Co., at Fall Term, 1868, for $417.73. The second, recovered by Branch & Herbert, at Fall Term, 1868, for $211.17. The third, recovered by J. H. Parker, for $1,178.83 at —— Term, 1867. On the third, a payment had been made leaving due a balance of $531.84. The defendant also offered in evidence various executions which had been issued upon said judgments, and which were levied upon certain personal property of the defendant, Gunter, and upon the lands in controversy. The return upon said executions after setting forth a levy upon said lands, describing them as " the land on which said Gunter now resides," was as follows : " On the 28th December, 1868, I sold the personal property of A. Gunter, which brought the sum of $194.50 ; and on the first Monday in February I sold at the Court house door the following lands (described in the levy) belonging to said Gunter, one tract containing 440 acres, adjoining the lands of A. McDaniel and others, when the said McDaniel became

the last and highest bidder at the sum of $440; one other tract, containing four hnndred and seventy acres, adjoining the above tract and lands of the heirs of Gov. Branch, when A. McDaniel became the last and highest bidder at the sum of $470; also his homestead, containing four hundred acres, when A. McDaniel became the last and highest bidder at $250, which said sums amounting to $1,354.50, I have appropriated as follows: $446.13 to payment of judgment, interest, cost, commissions, &c., of this *fi fa.*, (Tannahill, McIlwaine & Co.,) and $231.75 to execution in favor of Branch & Herbert against Jesse Parker and A. Smith, and $54.11 to payment of said Gunter's taxes for 1868, and balance of $41.00 paid to G. V. Hardie. Upon the executions in favor of McIlwaine & Co., and Branch & Herbert, was the following endorsement: "For value received the within *fi. fa.* is transferred to G. V. Hardie, 30th of January, 1869."

The defendant then introduced a deed of said sheriff, duly recorded and proven, whereby the aforesaid lands were conveyed in fee simple to the said McDaniel; and also a deed from McDaniel to the defendant, John Beavans, dated the 29th day of March, 1869, duly proven and recorded on the same day, whereby the said lands were conveyed in trust for the use and benefit of the defendant, Gunter, during his natural life, and after his death for the use and benefit of the said Gunter's children, with a proviso that the interest of the said Gunter in the said lands should not be subject to the payment of any of his debts contracted prior to the execution of said deed in trust, but should be subject to the payment of such debts as he should thereafter contract. The defendant here rested his case.

The plaintiff then introduced a witness, who testified that McDaniel was the uncle of Gunter's deceased wife, and that the defendant, Beavans, was Gunter's son-in-law. It was admitted that McDaniel was seventy years of age, was wealthy, and had never been married.

The plaintiff then called G. V. Hardie as a witness, and

asked him if, at the time of the said sales, he was not the agent of Gunter. The witness answered that he was not; that he was friendly to Gunter, but was the agent of McDaniel. That a short time previous to the said sales, McDaniel requested him to buy the defendant, Gunter's land for him, and get him a good title thereto. Upon cross-examination, the defendant asked the witness, with whose money the bid made by Mc-Daniel was paid? The plaintiff objected to this question as bringing out matter new to the examination in chief, and insisted that the defendant could only ask the question by making the witness his own. The objection was overruled by the Court, and plaintiff excepted. Upon the re-direct examination his Honor allowed the plaintiff to re-examine the witness as an adverse witness.

The witness further stated that McDaniel had furnished $481.31 and that he, the witness, had furnished $10.00 from his individual funds and about $223 from a fund which he held in his hands as agent of McDaniel and two other parties to meet certain expected liabilities by reason of their having become sureties for a constable, towards the payment of McDaniel's bids. The two last sums mentioned had been repaid to him by McDaniel. Witness had gone on his own business to the town of Enfield, on the 30th day of January, 1869, being Saturday before the sale on the following Monday. That while there he had consulted with an attorney at law who, at that time, represented the firm of Branch & Herbert, as to what steps he should take to prevent Parker from postponing a sale of the lands, which he understood had been threatened by Parker in order to enable him to reduce to judgment certain other claims which he held against Gunter. The witness regarded this as necessary, because Parker was a man of wealth, and held unsecured claims to a considerable amount against Gunter, and witness wanted to get rid of Parker's money. The attorney advised him that it was necessary for him to control the judgments of Tannahill, McIlwaine & Co., and of Branch & Herbert, whereupon the witness took from the attorney an assign-

ment of the judgments of Branch & Herbert, and the same day despatched the defendant, John Beavans, to Petersburg, in the State of Virginia, where Tannahill, McIlwaine & Co. did business, who obtained from them an assignment to witness of their judgment. McDaniel and Gunter were both in town on that day, but the parties had not met by any preconcerted arrangement. Witness had conferred with McDaniel about the matter, but not with Gunter. He had never had any conference with Gunter concerning these lands. Some four or five months before the sale of Gunter's personal property, Gunter had asked him to buy in an execution then outstanding against him, for the purpose of having his personal property sold under it, and had offered him the money for that purpose; but he laughed at Gunter, and asked "if that was the way he did business," and refused to do so. That Gunter had also asked him, just before the sale, to buy in his personal property for him and allow him, (Gunter,) to repay him the money so expended. Witness consented to this, and did buy in the personal property, and Gunter has since repaid him the money. At the sale of the land the witness bid for McDaniel. McDaniel was not present. Parker's judgment was satisfied by his accepting the note of the principal debtor, Jesse R. Parker, in payment of the balance due thereon, secured by the name of McDaniel. He did not know whether or not Mc-Daniel had paid the note. There was a matter of cost, amounting to $81, over and above the balance due Parker, which the witness paid to the sheriff, but which was shortly thereafter repaid to him by the sheriff, and by witness given to Gunter. Witness received no remuneration for his services, either from Gunter or McDaniel.

The plaintiff introduced a paper writing which, after the death of McDaniel, had been found by one Alsop, his administrator, among his valuable papers. The paper writing was in words and figures as follows:

" $495.31

" With interest from first day of February, 1869, I promise to pay A. McDaniel or order the sum of four hundred ninety-five dollars, thirty-one cents for value received. My hand and seal, this 15th March, 1870.

[cut out] [seal.]

This note was cancelled, the name of the maker having been cut out. Upon the back of said note was the following endorsement: " A. Gunter's note, $431.95."

Gunter was then introduced by the defendant, and testified that he had executed the note to McDaniel at the time it bore date. McDaniel was unwilling to take the note, but witness feeling grateful for the kindness McDaniel had shown him, insisted upon making some return, and pressed McDaniel until he finally accepted the note. A short time afterward, McDaniel met witness and told him " that he had cancelled the note. That he did not wish it said that witness had never paid the note, or furnished any part of the money which paid for the land." At the time of the sale witness was insolvent, and had no money. He had no recollection of having asked Hardie to buy in the execution, to which Hardie had referred in his examination. He had written to Branch & Herbert sometime in January, 1869, concerning money which they had in their hands, but the money belonged to his tenants, and was the proceeds of cotton shipped for them by him to Branch & Herbert.

One of the said tracts of land contained about eight hundred and sixty acres, of which a little more than one half was cleared ; and the other tract contained four hundred and forty acres, of which a considerable portion was cleared, but only about one good horse crop was fit for cultivation. On the latter tract was a good dwelling house and out buildings. These lands were situated within from one to three miles of the town of Enfield, and the larger tract was very fair land, and would produce one half bale of cotton per acre on an aver-

THORPE *v.* BEAVANS, Trustee, *et al.*

age. He was in Enfield on the 30th day of January, 1869—had no particular business there. He went there almost every day. He saw McDaniel and Hardie there, but had no conference with them about his matters. He felt no anxiety on account of the approaching sale. He had owned the lands a long time, and had not removed since the sale.

· The defendant then introduced several witnesses for the purpose of proving the good character for truth, of G. V. Hardie, the witness introduced by the plaintiff, and of A. Gunter, the witness introduced by defendant. These witnesses testified that they knew the general character of both Hardie and Gunter was good for truth.

The counsel for the plaintiff requested his Honor to charge the jury :

That if in the management of the sale of Gunter's lands, any device was resorted to by McDaniel himself, or by Hardie, his agent, or by Gunter, the defendant in the execution, to prevent the property bringing its best price, the deed to McDaniel is void as to creditors, even if he paid the whole amount of his bid out of his own funds.

2. The plaintiff having shown title by sheriff's deed under a sale under execution issued on a judgment against the said Gunter—that Gunter had remained in possession after the sale until the action was brought, and that the transactions under which the defendant now claims title were had between near relations of the said Gunter, the burden of satisfying the jury of the good faith of those transactions rested upon the defendant.

3. That if Hardie, as the agent of McDaniel, conspired to hinder creditors of Gunter, his principal is affected by the conspiracy, and the jury must regard the action of the agent as the action of the principal so far as the rights of the plaintiff are concerned.

His Honor declined to charge as requested, and charged the jury, " That the only question involved in the action was, was the land bought with Gunter's money or McDaniel's money ?

" That if the jury believed that Gunter, the defendant in the executions, and G. V. Hardie, nothing else appearing, combined together to cheat, defraud, hinder and delay the creditors of Gunter, and that if McDaniel bought without notice of the combination, he is an innocent purchaser and his title good."

The plaintiff excepted to the charge of his Honor. There was a verdict and judgment for the defendant, and the plaintiff appealed.

*Busbee & Busbee* and *Moore & Gatling*, for the appellant. *Batchelor*, contra.

RODMAN, J.  I.  It became a question in the cause whether the purchase of the land in controversy by McDaniel, through his agent Hardie, was fraudulent or not, which involved the question by whose money the price bid had been paid.  The plaintiff who alleged that the sale was fraudulent, introduced Hardie as a witness, and asked him if he, at the time of the sale, was not the agent of Gunter.  The witness replied in substance, that he was not, but that he was the agent of Mc-Daniel.  On cross examination, the defendant asked the witness with whose money the bids for McDaniel were paid. The plaintiff objected to the question as bringing out matter new to the examination in chief, and insisted that defendant could only ask the question by making the witness his own. The Judge overruled the exception and permitted the defendant to proceed in his examination.  To this the plaintiff excepted.  His Honor, however, afterwards allowed the plaintiff to re-examine the witness as an adverse one ; that is, as we infer, to ask him leading questions.  At a later stage of the case it appears that the Judge permitted the defendant to introduce witnesses to support the character of Hardie.

There is some difference in the authorities as to whether a party is confined on a cross-examination to the matter proved in chief, or may extract from the witness new matter material

for his case, and whether if he does so he thereby makes the witness his own. 1 Greenl. Ev., sec. 445. We think it is not necessary for us to express any opinion on the question, as the Judge practically gave to the plaintiff the benefit of the rule he contended for by allowing him to put leading questions to the witness on his re-examination. There are but two other advantages which could have accrued to the plaintiff under any circumstances from considering Hardie as the witness of the defendant for all purposes, viz: the right of impeaching his credibility, and of the reply, before the jury. The first of these he does not appear to have claimed, and the second he had. If an error was committed in the ruling of the Judge it had no practical result.

II. The plaintiff requested the Judge to charge the jury,

1. " That if in the management of the sale of Gunter's land, any device was resorted to by McDaniel himself, or by Hardie his agent, *or by Gunter the defendant in the execution*, to prevent the property bringing its best price, the deed to McDaniel is void as to creditors, even if he paid the whole amount of his bid out of his own funds."

We do not see on what principle, a purchaser at execution sale, should be held liable for any devices of the defendant in execution, of which he was innocent and ignorant. If this were the law, a purchaser at execution sale, could never be sure that the sale was valid, and it might be used to defraud him. No authority was cited to support the proposition, and the instruction was rightfully refused.

2. " The plaintiff having shown title by sheriff's deed, under a sale under execution issued on a judgment against the said Gunter, that Gunter had remained in possession after the sale until the action was brought; and that the transactions under which the defendant now claims title were had between near relatives of the said Gunter, the burden of satisfying the jury of the good faith of those transactions rested upon the defendant.

As far the facts in evidence made this charge a proper one,

we think the Judge gave the plaintiff the benefit of it, when he put on the defendant the necessity of showing that McDaniel paid for the land from his own means. The sheriff was no relation of Gunter. When a relation of the defendant in the execution purchases property, and then conveys it to the defendant, it does raise a suspicion ; and these circumstances, with others, should go to the jury to be weighed by them in determining the question of fraud. But these circumstances seem to have been fairly left to the jury in that view.

3. " That if Hardie, as the agent of McDaniel, conspired to hinder creditors of Gunter, his principal is affected by the conspiracy, and the jury must regard the action of the agent as the action of the principal, so far as the rights of the plaintiff are concerned."

The Judge refused all the instructions asked for, and told the jury " that the only question involved in the action was— was the land bought with Gunter's money or McDaniel's money ? That if the jury believed that Gunter, the defendant in the execution, and Hardie, nothing else appearing, combined together to cheat, defraud, hinder, and delay the creditors of Gunter, and if McDaniel bought without notice of this combination, he is an innocent purchaser, and his title good."

Whether the charge of the Judge was right or not, presents a very interesting question, upon which there is no authority that we have been referred to, or that occurs to us. But it is one that we are not called on to decide. The prayer of the plaintiff assumes that there was evidence of a fraudulent conspiracy between Hardie and Gunter, or between Hardie and some others, to suppress competition among bidders, and prevent a sale at a fair price. The Judge also assumed that there was evidence to that effect, but held it to be immaterial. Now, although if there had been such evidence, the Judge might have been mistaken in supposing it immaterial, yet, if there was no such evidence, the question which he submitted to the jury was the true one in the case.

The counsel for the plaintiff earnestly contended that the

uncontradicted and admitted facts established such fraud on the part of Hardie, as would vitiate the sale if McDaniel was affected by it.   We do not think that a jury could reasonably draw such a conclusion from the facts to which the counsel adverted.

We assume it to be established by the verdict, that McDaniel paid for the land from his own means, and not from Gunter's, and that there was no understanding between him and Gunter, that Gunter should repay him the price, or any part of it, and have an interest in the land.   We may therefore put out of view all the evidence which tends merely to negative the finding of the jury on this point.   The circumstances which the counsel relies on as conclusive of fraud are these :

1. That Hardie bought up before the sale the debts of the execution creditors, and thus obtained a certain amount of control over the sale; and, to the amount of the execution debts bought, a right to have them credited on his bid in lieu of paying the whole of it in cash.   We know of no reason why this should be illegitimate or forbidden in one who wishes to purchase property at an execution sale, and there is no authority which holds it to be so.   That Hardie or McDaniel owned the debts did not tend to suppress competition any more than if original creditors had continued to own them.   Parker, as well as all other persons, might still have bid.   There was nothing to forbid or discourage them.

2. The property, after its purchase by McDaniel, who was related to the wife of Gunter, was conveyed by McDaniel to the defendant, as a trustee for Gunter for life, with remainder to his children.

We have already said that these facts were competent and proper evidence upon the question, whether the price of the land was really paid by Gunter or by McDaniel.   But we do not perceive their relevancy as tending to prove any other sort of fraud, such as a suppression of competition at the sale.   A purchaser at execution sale may lawfully buy the property of the insolvent debtor with the intent of giving the whole or a

part of it to him or his family afterwards.   There is no principle of law which forbids such an act of benevolence, and if the value of the property thus given, comes within the limit of the homestead exemption, the debtor may enjoy it free from interference by his creditors.

We have considered this case simply on the points made by the record, and are of opinion that the judgment below should be affirmed.

PER CURIAM.                              Judgment affirmed.